08 CIV 10807

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN M. GAMORAN, individually, derivatively and on behalf
of all others similarly situated,

                      Plaintiff,

      - against -

NEUBERGER BERMAN MANAGEMENT LLC, NEUBERGER BERMAN,
LLC, BENJAMIN SEGAL, MILU E. KOMER, PETER E. SUNDMAN,
JACK L. RIVKIN, JOHN CANNON, FAITH COLISH, MARTHA C. GOSS,
C. ANNE HARVEY, ROBERT A. KAVESH, HOWARD A. MILEAF,
EDWARD I. O'BRIEN, WILLIAM E. RULON, CORNELIUS T. RYAN,
TOM D. SEIP, CANDACE L. STRAIGHT, AND PETER P. TRAPP,

                      Defendants,

      - and -

NEUBERGER BERMAN EQUITY FUNDS d/b/a NEUBERGER BERMAN
INTERNATIONAL FUND,

                      Nominal Defendant.

RECEIVED

DEC 1 2 2008

U.S.D.C. S.D. N.Y.
CASHIERS

**VERIFIED CLASS ACTION
AND DERIVATIVE
COMPLAINT AND JURY
DEMAND**

Plaintiff alleges:

### OVERVIEW

1.    This lawsuit arises from criminal acts committed by the defendants ("Defendants") when they unlawfully invested money entrusted to them by the plaintiff Benjamin M. Gamoran ("Plaintiff") and others in illegal gambling businesses. These unlawful investments suffered significant losses when the government began arresting principals of the gambling enterprises during a law enforcement crackdown beginning in 2006.

2.    Plaintiff is a shareholder in nominal defendant Neuberger Berman Equity Funds d/b/a Neuberger Berman International Fund (the "Nominal Defendant").

3.      Defendants caused the Nominal Defendant to illegally invest in one or more entities whose primary businesses constituted illegal gambling under the laws of one or more of the United States. The market value of those investments plummeted when law enforcement officials began arresting principals of, and otherwise targeting for prosecution, the illegal gambling businesses. That, in turn, resulted in injury to investors like Plaintiff who had invested in the Nominal Defendant.

4.      Defendants are the individuals and entities responsible for causing the Nominal Defendant to make the illegal investments that led to Plaintiff's injuries.

5.      Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), as well as common law claims for breach of fiduciary duty and negligence.

6.      Defendants, each of whom is a person or entity employed by or associated with the Nominal Defendant, conducted the affairs of the Nominal Defendant through a pattern of racketeering. Specifically, each of the Defendants knowingly developed and implemented (or conspired to develop and implement) an investment strategy pursuant to which the Nominal Defendant was caused repeatedly and over a significant period of time to purchase shares in "illegal gambling businesses" as that term is used in 18 U.S.C. § 1955, which makes it a felony to finance or to own all or part of an illegal gambling business. By causing the Nominal Defendant to purchase stock in illegal gambling businesses, Defendants caused the Nominal Defendant to finance and to become a part owner of illegal gambling businesses and thereby to violate 18 U.S.C. § 1955.

7.      A violation of 18 U.S.C. § 1955 is a predicate crime under RICO. 18 U.S.C. § 1961(1)(B). Thus, by causing the Nominal Defendant to purchase stock of illegal gambling businesses repeatedly and over a significant period of time, Defendants conducted the affairs of the

Nominal Defendant through a pattern of racketeering in violation of 18 U.S.C. § 1962(c). They also conspired to violate 18 U.S.C. §1962(c) within the meaning of 18 U.S.C. § 1962(d).

8.      In addition to violating RICO, Defendants breached their common law fiduciary duties and their duty of care to the shareholders who invested in the Nominal Defendant. Accordingly, Plaintiff also asserts common law claims for breach of fiduciary duty and negligence.

9.      Because Defendants' unlawful conduct injured the Nominal Defendant itself, Plaintiff asserts derivative claims on behalf of the Nominal Defendant.

10.     Because Defendants' wrongdoing injured numerous investors in the Nominal Defendant in exactly the same way, this action is brought, in the alternative, as a class action.

THE PARTIES

**PLAINTIFF**

11.     At all times relevant to this action, Plaintiff was a resident of New York. He purchased 713 shares of the Nominal Defendant in 2000 for investment purposes. He still owns his shares in the Nominal Defendant.

**NOMINAL DEFENDANT**

12.     Nominal Defendant is a statutory trust organized under the laws of the State of Delaware. It has a principal place of business at 605 3rd Ave., 2nd Fl., New York, NY 10158-0180. It is an investment company registered under the Investment Company Act of 1940. It offers 25 different "series" of shares representing 25 different mutual funds, one of which is known as Neuberger Berman International Fund (the "Fund"). Its 25 different mutual funds are not separate legal entities. The investors in all 25 funds hold different series of shares in the same legal entity, which is managed by a single board of trustees. The assets of each fund belong only to that fund, and

the liabilities of each fund are borne solely by that fund and no other. The series of shares purchased and owned by Plaintiff is the series for the Fund.

**DEFENDANTS**

13.     Defendant Neuberger Berman Management LLC ("NBM") is an investment management company. NBM serves as investment advisor to many investment companies, including the Nominal Defendant. NBM is organized under the laws of the State of New York and maintains its principal place of business at 605 3rd Ave., 2nd Fl., New York, NY 10158-0180.

14.     Defendant Neuberger Berman, LLC ("NB"), serves as the sub-advisor to the Nominal Defendant. NB is organized under the laws of the State of Delaware. Its principal place of business is 605 3rd Ave., 2nd Fl., New York, NY 10158-0180.

15.     NBM and NB are subsidiaries of Neuberger Berman Holdings, LLC ("Holdings"). Holdings is a wholly-owned subsidiary of Lehman Brothers Holdings Inc., a publicly-held corporation that is in bankruptcy.

16.     Defendant Benjamin Segal has served as Vice President of NBM and Managing Director of NB since 2003. He has served as the Portfolio Manager of the Fund during all relevant times.

17.     Defendant Milu E. Komer served as Vice President of NBM and Managing Director of NB from 2001 until her departure from those firms in November 2008. She served as the Associate Portfolio Manager of the Fund during all relevant times.

18.     Defendant Peter E. Sundman ("Sundman") has served as the Chairman of the Board and Chief Executive Officer and trustee of the Nominal Defendant since at least 1999. During all relevant times, he has also served as Executive Vice President of Holdings; Head of Holdings's

mutual fund business; President and Director of NBM; and Managing Director or Executive Vice President of NB.

19.     Defendant Jack L. Rivkin ("Rivkin") has served during all relevant times as President and trustee of the Nominal Defendant. At all relevant times, he has also served as Executive Vice President and Chief Investment Officer of Holdings; Managing Director and Chief Investment Officer or Executive Vice President of NB; and Director and Chairman of NBM.

20.     Defendants John Cannon, Faith Colish, Martha C. Goss, C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf, Edward I. O'Brien, William E. Rulon,  Cornelius T. Ryan, Tom D. Seip, Candace L. Straight and Peter P. Trapp (collectively, with Sundman and Rivkin, the "Trustees"), are and have served as trustees of the Nominal Defendant during all relevant times.

21.     Each of the Trustees had a fiduciary duty to act in the best interests of the shareholders of the Fund. To an even greater degree than the directors of corporations that are not mutual funds, the trustees or directors of mutual funds are responsible for protecting the funds they serve under a unique watchdog role.

### JURISDICTION AND VENUE

22.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (commerce regulation) and 1367(a) (supplemental jurisdiction) and 18 U.S.C. § 1964 (RICO).

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 (RICO) because some of the acts and practices complained of herein  occurred in substantial part within this district and because one or more Defendants reside, has an agent, or transacts their affairs within this district.

24.    In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including without limitation, the mails, interstate telephone communications, the Internet, and the facilities of the national securities markets and exchanges.

### FACTS COMMON TO ALL CLAIMS

25.    Each of the Defendants is a person employed by or associated with the Nominal Defendant.

26.    Each of the Defendants had operational or managerial control over the Nominal Defendant.

27.    Each of the Defendants knowingly developed and implemented (or conspired to develop and implement) an investment strategy pursuant to which the Nominal Defendant was caused – repeatedly and over a significant period of time – to purchase shares in "illegal gambling businesses" as that term is used in 18 U.S.C. § 1955. By causing the Nominal Defendant to purchase stock in illegal gambling businesses, Defendants caused the Nominal Defendant to finance and become a part owner of illegal gambling businesses in violation of 18 U.S.C. § 1955.

28.    Each of the Defendants agreed to cause, and participated in a scheme to cause, the Nominal Defendant to purchase stock in one or more illegal gambling businesses.

29.    Pursuant to the foregoing agreement and scheme, one or more of the Defendants did in fact cause the Nominal Defendant, repeatedly and over a significant period of time or in an open-ended scheme, to purchase stock in one or more illegal gambling businesses which were illegal under the laws of one or more of the United States.

30.    The Nominal Defendant is an open-ended investment company whose activities affect interstate or foreign commerce.

- 6 -

31.     The Nominal Defendant is an enterprise within the meaning of RICO.

32.     Section 1955 of Title 18 makes it unlawful to finance or own all or part of an illegal gambling business.

33.     One who purchases stock of a gambling business finances and becomes a part owner of such business. Thus, every time the Nominal Defendant purchased stock of an illegal gambling business, it violated Section 1955 of the Criminal Code.

34.     Defendants caused the Nominal Defendant repeatedly to violate 18 U.S.C. § 1955 within a ten-year period by causing the Nominal Defendant to purchase shares of "illegal gambling business[es]" within the meaning of § 1955.

35.     In causing the Nominal Defendant to purchase stock of one or more illegal gambling businesses, each of the Defendants exercised operational or managerial control over the Nominal Defendant.

36.     At the time Defendants caused the Nominal Defendant to purchase stock in illegal gambling companies, such companies were illegal gambling businesses because the business of each of the gambling companies (a) violated the laws of one or more of the United States; (b) involved five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and (c) had been or remained in substantially continuous operation for a period in excess of thirty days or had a gross revenue of $2,000 in any single day.

37.     Defendants' activities causing the Nominal Defendant to invest in illegal gambling businesses constituted an open-ended, continuous pattern of racketeering activity under 28 U.S.C. § 1962(c).

38.     Defendants conducted or caused to be conducted, or were reckless in failing to conduct or to cause to be conducted, due diligence before the Nominal Defendant purchased shares

in the gambling businesses. Accordingly, Defendants each knew, or is deemed to have known, that the businesses were taking bets from gamblers in the United States.

39.    Defendants knew, or are deemed to have known, that the illegal gambling businesses in which they caused Nominal Defendant to invest were taking bets from gamblers in the United States through numerous publicly-available sources of information, including, without limitation, news media, government sources, and information provided by the gambling companies themselves.

40.    In or about 2006, federal and state law enforcement agencies began a crackdown on illegal gambling businesses such as those in which Defendants had caused the Nominal Defendant to invest. As a result, the stock prices of all such illegal gambling businesses fell substantially.

41.    As a proximate result of Defendants' acts in causing the Nominal Defendant to invest in illegal gambling businesses, Plaintiff was injured.

42.    Each purchase of shares of a gambling company caused the Nominal Defendant to own part of an illegal gambling business.

43.    Each purchase of shares of a gambling company caused the Nominal Defendant to finance an illegal gambling business.

44.    In addition to conducting or participating in the conduct of the Nominal Defendant's activities through a pattern of racketeering, Defendants also agreed and conspired to violate 18 U.S.C. § 1962(c) by conducting or participating in the conduct of the affairs of the Nominal Defendant through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(d). Specifically:

a.      Defendants agreed to cause the Nominal Defendant to invest in illegal gambling businesses, and

b.      in furtherance of such conspiracy, Defendants caused the Nominal Defendant to make investments in one or more illegal gambling businesses.

45.    Plaintiff has been injured in his or her business or property through Defendants' violation of 18 U.S.C. § 1962.

46.    Plaintiff's injuries were proximately caused by Defendants' racketeering activities and the overt acts taken in furtherance of Defendants' racketeering conspiracy.

47.    Plaintiff's injuries were the foreseeable, direct and natural consequence of unlawful investments in illegal gambling businesses.

48.    Defendants' actions breached their fiduciary duties to the Nominal Defendant.

49.    Defendants' actions also breached their fiduciary duties to the holders of the series of shares representing investments in the Fund.

50.    Defendants' actions also constituted negligence in that they breached a duty of care owed to the Nominal Defendant.

51.    Defendants' actions also constituted negligence in that they breached a duty of care owed to the holders of the series of shares representing investments in the Fund.

52.    Plaintiff has been injured as a result of Defendants' breaches of fiduciary duties and negligence.

53.    Each of the Nominal Defendants has been injured as a result of Defendants' racketeering, breach of fiduciary duty and negligence.

### ALLEGATIONS COMMON TO ALL DERIVATIVE CLAIMS

54.     With respect to all derivative claims alleged herein, no demand for relief has been made because:

a.     A majority of the Board of Trustees of the Nominal Defendant have disabling interests and lack independence;

b.     any demand would be futile because granting such demand would create a substantial likelihood of criminal and civil liability for the Trustees; and

c.     the challenged transactions are *ultra vires* and outside the scope of lawful business judgment.

55.     To an even greater degree than directors of ordinary corporations, mutual fund directors, including the Trustees, are responsible for protecting the Nominal Defendant's shareholders under a unique watchdog role. Thus, each of the Trustees had a special duty to ensure that the funds over which they served a watchdog role did not invest in illegal gambling businesses.

56.     The Trustees also had a duty to ensure that the Nominal Defendant had proper control mechanisms to ensure that they did not make any investments in any illegal gambling businesses.

57.     As part of its role as investment adviser, NBM selects the persons who serve on the Nominal Defendant's board of trustees, including the Trustees. Accordingly, the relationship between the Trustees and the Nominal Defendant is fraught with conflicts of interest. Because a demand in this case would require the Trustees to cause the Nominal Defendant to sue NBM, NB and the Trustees, the Trustees are inherently conflicted from exercising independent and disinterested business judgment.

58.     Pre-suit demand upon the Trustees would have been futile because the Trustees could not have properly exercised his or her independent and disinterested business judgment in responding to a demand. Not only were they exposed to civil and criminal liability, but the relationship between the Trustees, the Nominal Defendant and NBM and NB creates a potential conflict of interest that creates a strong presumption against board independence and disinterest.

59.     The Trustees, who constitute a majority of the Board of Trustees of the Nominal Defendant, have a disabling interest and lack independence as set forth above.

60.     The Trustees have served as trustees of the Nominal Defendant since at least 2004. Accordingly, the Trustees served on the Board of Trustees of the Nominal Defendant during the time that Defendants caused the Nominal Defendant to invest in the illegal gambling businesses and were members of the conspiracy alleged herein.

61.     The Trustees each face a substantial threat of personal civil and criminal liability for causing, allowing, or permitting the investments in illegal gambling businesses.

62.     The Trustees lack the capacity to make independent and disinterested business judgments in deciding whether to sue NBM, NB and themselves for the wrongs alleged herein.

63.     Plaintiff was a shareholder of the Nominal Defendant at the time of the transactions of which he complains.

64.     Plaintiff is still a shareholder in the Nominal Defendant.

65.     This action is not a collusive one to confer jurisdiction on this Court which it would not otherwise have.

66.     Plaintiff will fairly and adequately represent the interests of the Nominal Defendant.

- 11 -

## CLASS ALLEGATIONS

67.     Plaintiff seeks to represent a class of investors in the Nominal Defendant who purchased one or more shares of the series of shares representing investments in the Fund prior to July 17, 2006 (the "Class Period") and who still held such shares after July 17, 2006 (the "Class").

68.     Excluded from the Class are Defendants, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

69.     The requirements of Fed. R. Civ. P. 23(a) are met because:

a.      The members of the Class are so numerous that joinder of all members is impracticable.

b.      There are questions of law and fact common to the Class, including whether:

i.      Defendants' acts and conduct as alleged herein violated RICO;

ii.     Defendants breached their fiduciary and other duties to Plaintiff;

iii.    Defendants committed negligence;

iv.     Defendants' wrongful conduct proximately caused injury to Plaintiff; and

v.      Defendants are required to forfeit all fees, commissions or other profits received from the time they first violated their fiduciary duties to Plaintiff.

c.      Plaintiff's claims are typical of the claims of the members of the Class

he seeks to represent because all members of the Class were injured by Defendants'

wrongful conduct in exactly the same way.

d.      Plaintiff will fairly and adequately protect the interests of the Class

because Plaintiff's attorneys are qualified, experienced, and generally able to conduct

the proposed litigation. Moreover, Plaintiff individually and collectively have no

interests antagonistic to those of the Class.

70.     The requirements of Fed. R. Civ. P. 23(b)(3) are met because:

a.      A class action is superior to all other available methods for the fair

and efficient adjudication of this controversy because:

      i.      The class members' individual interests are small, such that

they would have no interest in individually controlling the

prosecution of separate actions;

      ii.     No other litigation concerning this controversy has been

commenced;

      iii.    It would be desirable to concentrate the litigation of these

claims in this forum; and

      iv.     It is unlikely that there will be significant difficulties in

managing this case as a class action.

**FIRST CLAIM FOR RELIEF**
**(DERIVATIVE CLAIM)**
**(CIVIL RICO, 18 U.S.C. § 1962(c))**

71.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

72.     This claim is brought by Plaintiff on behalf of the Nominal Defendant against all Defendants separately and distinctly from Plaintiff's claims individually and on behalf of the Class only to the extent that the claims and relief sought herein belong to the Nominal Defendant and not to the Class.

73.     The Nominal Defendant is an enterprise engaged in and whose activities affect interstate and foreign commerce. The Defendants are the Trustees, investment advisers and managers of the Nominal Defendant and therefore occupy managerial or operational positions with respect to the racketeering acts alleged herein.

74.     The Defendants agreed to and did conduct or participate in the conduct of the Nominal Defendant's affairs through a pattern of racketeering activity and for the unlawful purpose of investing in illegal gambling businesses in violation of 18 U.S.C. § 1962(c).

75.     Pursuant to and in furtherance of their unlawful scheme, the Defendants committed multiple racketeering acts by causing the Nominal Defendant to make numerous investments in various illegal gambling businesses on various occasions over an extended period of time.

76.     The foregoing acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

77.     As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff and the Nominal Defendant have been injured in their business and property.

## SECOND CLAIM FOR RELIEF
### (DERIVATIVE CLAIM)
### (CIVIL RICO, 18 U.S.C. § 1962(d))

78.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

79.     This claim is brought by Plaintiff on behalf of the Nominal Defendant against all Defendants separately and distinctly from Plaintiff's claims individually and on behalf of the Class only to the extent that the claims and relief sought herein belong to the Nominal Defendant and not to the Class.

80.     Each of the Defendants violated 18 U.S.C. § 1962(d) by conspiring and agreeing to conduct or participate in the conduct of the Nominal Defendant's affairs through a pattern of racketeering activity and for the unlawful purpose of investing in illegal gambling businesses, in violation of 18 U.S.C. § 1962(c).

81.     Pursuant to and in furtherance of their unlawful conspiracy, one or more of the Defendants committed one or more overt acts in furtherance of the conspiracy.

82.     As a direct and proximate result of the Defendants' conspiracy and the overt acts in furtherance of such conspiracy, Plaintiff and the Nominal Defendant have been injured in their business and property.

## THIRD CLAIM FOR RELIEF
### (DERIVATIVE CLAIM)
### (BREACH OF FIDUCIARY DUTY)

83.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

84.     This claim is brought by Plaintiff on behalf of the Nominal Defendant against all Defendants separately and distinctly from Plaintiff's claims individually and on behalf of the Class only to the extent that the claims and relief sought herein belong to the Nominal Defendant and not to the Class.

85.     Defendants have breached their fiduciary duties to the Nominal Defendant by causing the Nominal Defendant to invest in illegal gambling businesses.

86.     The Nominal Defendant has been injured as a direct, proximate and foreseeable result of such breach on the part of Defendants and has suffered substantial damages thereby.

### FOURTH CLAIM FOR RELIEF
### (DERIVATIVE CLAIM)
### (PLAINTIFF AGAINST ALL DEFENDANTS)
### (NEGLIGENCE)

87.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

88.     This claim is brought by Plaintiff on behalf of the Nominal Defendant against all Defendants separately and distinctly from Plaintiff's claims individually and on behalf of the Class only to the extent that the claims and relief sought herein belong to the Nominal Defendant and not to the Class

89.     The Nominal Defendant has been injured as a direct, proximate and foreseeable result of Defendants' negligence and has suffered substantial damages thereby.

### FIFTH CLAIM FOR RELIEF
### (DERIVATIVE CLAIM)
### (WASTE)

90.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

91.     This claim is brought by Plaintiff on behalf of the Nominal Defendant against all Defendants.

92.     Defendants each had a duty to the Nominal Defendant to prevent waste of the Nominal Defendant's assets.

93.     Defendants each breached their duties to prevent the waste of the Nominal Defendant's assets.

94.    The Nominal Defendant has been injured as a direct, proximate and foreseeable result of such breach on the part of the Defendants and has suffered substantial damages thereby.

### SIXTH CLAIM FOR RELIEF
### (INDIVIDUAL AND CLASS CLAIMS)
### (CIVIL RICO, 18 U.S.C. § 1962(c))

95.    Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

96.    This claim is brought by Plaintiff individually and on behalf of the Class pursuant to RICO, 18 U.S.C. §§ 1961, *et seq.*, against all Defendants only to the extent that the claims and relief sought herein belong to the Class and not to the Nominal Defendant.

97.    The Nominal Defendant is an enterprise engaged in and whose activities affect interstate and foreign commerce. The Defendants are the Trustees, investment advisers and managers of the Nominal Defendant and therefore occupy managerial or operational positions with respect to the racketeering acts alleged herein.

98.    The Defendants agreed to and did conduct or participate in the conduct of the Nominal Defendant's affairs through a pattern of racketeering activity and for the unlawful purpose of investing in illegal gambling businesses in violation of 18 U.S.C. § 1962(c).

99.    Pursuant to and in furtherance of their unlawful scheme, the Defendants committed multiple racketeering acts by causing the Nominal Defendant to make numerous investments in various illegal gambling businesses on several occasions over an extended period of time.

100.    The foregoing acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

101.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff and the Class have been injured in their business and property.

### SEVENTH CLAIM FOR RELIEF
### (INDIVIDUAL AND CLASS CLAIMS)
### (CIVIL RICO, 18 U.S.C. § 1962(d))

102.    Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

103.    This claim is brought by Plaintiff individually and on behalf of the Class pursuant to RICO, 18 U.S.C. §§ 1961, *et seq.*, against all Defendants only to the extent that the claims and relief sought herein belong to the Class and not to the Nominal Defendant.

104.    Each of the Defendants violated 18 U.S.C. § 1962(d) by conspiring and agreeing to conduct or participate in the conduct of the Nominal Defendant's affairs through a pattern of racketeering activity and for the unlawful purpose of investing in illegal gambling businesses, in violation of 18 U.S.C. § 1962(c).

105.    Pursuant to and in furtherance of their unlawful conspiracy, one or more of the Defendants committed one or more overt acts in furtherance of the conspiracy.

106.    As a direct and proximate result of the Defendants' conspiracy and the overt acts in furtherance of such conspiracy, Plaintiff and the Class have been injured in their business and property.

### EIGHTH CLAIM FOR RELIEF
### (INDIVIDUAL AND CLASS CLAIMS)
### (BREACH OF FIDUCIARY DUTY)

107.    Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

108.    This claim is brought by Plaintiff individually and on behalf of the Class against all Defendants only to the extent that the claims and relief sought herein belong to the Class and not to the Nominal Defendant.

109.    Defendants owe a fiduciary duty to the holders of the series of shares representing investments in the Fund.

110.    Defendants have breached their fiduciary duties to Plaintiff and the Class by causing the Nominal Defendant to invest in illegal gambling businesses.

111.    Plaintiff and the Class have been injured as a direct, proximate and foreseeable result of such breach on the part of Defendants and have suffered substantial damages thereby.

### NINTH CLAIM FOR RELIEF
### (INDIVIDUAL AND CLASS CLAIMS)
### (NEGLIGENCE)

112.    Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

113.    This claim is brought by Plaintiff individually and on behalf of the Class against all Defendants only to the extent that the claims and relief sought herein belong to the Class and not to the Nominal Defendant.

114.    Defendants owed a duty to the holders of the series of shares representing investments in the Fund to exercise reasonable care with respect the Nominal Defendant's investments.

115.    Defendants breached their duty of care to the members of the Class by causing the Nominal Defendant to invest in illegal gambling businesses.

116.    As a proximate result of Defendants' negligence, Plaintiff and the Class have been damaged.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that, upon the trial of this action, Plaintiff recovers for himself, for the Nominal Defendant and for the Class, from each Defendant, jointly and severally, as follows:

a.      Compensatory damages for individual shareholders representing the reduction in value of their investments resulting from Defendants' wrongful conduct, in an amount estimated to be $30 million;

b.      Compensatory damages for the Nominal Defendant representing the reduction in value of its investments resulting from Defendants' wrongful conduct, in an amount estimated to be $30 million;

c.      Forfeiture and disgorgement of any commissions, fees or profits received by Defendants from the time of their first wrongful conduct, in an amount estimated to be $9 million;

d.      Treble damages;

e.      Punitive damages;

f.      Recovery of Plaintiff's attorney's fees, expert witness fees, and costs and disbursements of suit;

g.      Pre-judgment and post-judgment interest; and

h.      Such other and further relief to which Plaintiff is deemed entitled by the Court and/or the jury.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 11, 2008

Thomas I. Sheridan, III
HANLY CONROY BIERSTEIN
SHERIDAN FISHER & HAYES, LLP
112 Madison Avenue
New York, NY 10016-7416
(212) 784-6400—Phone
tsheridan@hanlyconroy.com

- and -

SIMMONSCOOPER LLC
707 Berkshire Blvd.
East Alton, Illinois 62024
(618) 259-2222—Phone
kbrennan@simmonscooper.com

*Attorneys for Plaintiff*

### VERIFICATION

Benjamin M. Gamoran, pursuant to 28 U.S.C. § 1746, hereby verifies, under penalty of perjury, that the foregoing complaint is true and correct to the best of his knowledge information and belief, formed after reasonable inquiry.


Executed: December 11, 2008


_Benjamin M. Gamoran_

Benjamin M. Gamoran